CREIGHTON GAS, ELECTRIC LIGHT & POWER COMPANY, APPELLEE, v. I. J. JAMISON ET AL., APPELLANTS: ALICE C. HOUGH, INTERVENER, APPELLEE.

FILED JULY 21, 1920. No. 20860.

Vendor and Purchaser: EVIDENCE. Evidence examined, and *held* to support the finding and decree of the district court.

APPEAL from the district court for Knox county: ANSON A. WELCH, JUDGE. *Affirmed.*

*Richard Steele* and *M. H. Leamy*, for appellants.

*W. A. Meserve*, contra.

DAY, J.

Creighton Gas, Electric Light & Power Company, a corporation, hereinafter designated the company, instituted this action in the district court for Knox county against I. J. Jamison and F. B. Jamison, his wife, to cancel and set aside two certain deeds executed and delivered by the company on July 20, 1915, in which I. J. Jamison is named as grantee, and to quiet the title

in said respective properties in the company. By a cross-petition I. J. Jamison prayed that the title to the respective properties be quieted in him, and that all machinery, poles and wires situated upon the premises hereinafter described as tract one, and the poles, wires and branch line running from said tract to the village of Bazile Mills, be decreed to be the property of I. J. Jamison, and for an accounting of rents due upon the prem- ises described hereinafter as tract two. For the sake of brevity and convenience, the premises in controversy and described as the east 22 acres of the southwest quarter of the southwest quarter of section 27, in town- ship 30 north, range 5 west of the sixth principal meridian, and a tract commencing at the southwest corner of the southeast quarter of the southwest quarter of section 27, township 30 north, range 5 west of the sixth principal meridian, thence east on section line 30 rods, thence north at right angles to said section line 29 rods to the intersection of Bazile creek, thence westerly along the south edge of said creek to the intersection of the west line of said southeast quarter of the southwest quarter with said creek, thence south on said west line 40 rods to place of beginning, will be referred to as tract one; and the premises described as the east half of lot 4, in block 1, of O. A. H. Bruce's addition to the city of Creighton, Nebraska, will be referred to as tract two.

By its decree the trial court quieted the title to tract one in the company, and quieted the title to tract two in I. J. Jamison, and also rendered decree against the company and in favor of I. J. Jamison for $272, being rent for the premises described as tract two up to August 1, 1918. I. J. Jamison has filed an appeal from that portion of the decree quieting the title to tract one in the company. The company has filed a cross-appeal from that part of the decree affecting tract two, and the money judgment for rent.

The record shows that on and prior to July 12, 1915, the entire capital stock of the company was owned and held by I. J. Jamison, his wife, and two sons. On that date I. J. Jamison, acting for himself and the other stockholders of the company, entered into a contract with one Alice C. Hough, whereby the parties made a mutual exchange of their respective properties, I. J. Jamison and his associates exchanging all of the capital stock held by them in the company, including the physical property of the company, for an orange ranch owned by Alice C. Hough in California. By the terms of the transfer both properties were to be free and clear of all incumbrances, and the actual transfer of the properties was to be made as near August 1, 1915, as practicable. The company had its principal place of business in the city of Creighton, and furnished electric lighting for that city, as well as the village of Bazile Mills, the power being carried between the two points by a transmission line. It also had a pole line extending from the land described as tract one to the village of Bazile Mills, a distance of about two miles. Upon this tract a dam had been constructed for the purpose of generating electricity from the water power, as an auxilliary to the main power station in the city of Creighton. A system of line poles and wires connected tract one with the village of Bazile Mills and thus became a part of the plant. Some two years prior to the trade, this dam had washed out and was not in condition to be used without considerable repairs being made upon it. The record also showed that, at the time of the contract between the Jamisons and Alice C. Hough, the company was the owner of, and held the record title to, three pieces of land, to wit, tract one, tract two, and the tract upon which the power plant was located. After signing the contract for the exchange, and on July 20, 1915, the company, by its then officers, I. J. Jamison, president, and D. R. Jamison, secretary, executed and delivered

to I. J. Jamison deeds conveying the title to tracts one and two before mentioned, which deeds were duly recorded on July 21, 1915, in Knox county, Nebraska. It was claimed upon the trial that these two deeds were given in payment of $2,750 for advancements made by I. J. Jamison to the company.

There is a sharp conflict in the testimony as to whether the lands described as tract one and tract two were to be included in the trade, but on a careful review of the testimony we are of the opinion that tract one was to be included in the terms of the exchange and tract two excluded. Both Mr. and Mrs. Hough in their testimony say that Jamison told them that the office property (tract two) belonged to him personally and was not to be considered as going in the deal, that nothing was said by him excluding in any way from the operation of the trade tract one. Jamison's testimony is to the effect that at all times he reserved from the trade tracts one and two. After the actual exchange had been made on August 6, the company leased from I. J. Jamison tract two. This transaction would be entirely inconsistent with the idea of ownership, and clearly indicates that Alice C. Hough understood that tract two was not included in the deal. There was an effort made on the part of I. J. Jamison to show that the deeds to him made by the company were based upon a contract between himself and the company made long prior to the trade in question, by which these deeds were to be given in payment for advances made by him to the company. The testimony on behalf of I. J. Jamison, in so far as it affected tract one, had so many earmarks of bad faith that the trial court was amply justified in finding that there was no consideration to support the deed from the company to him as to tract one. The testimony of Mr. Hough, who examined the property as agent of the wife, establishes that Jamison represented that this tract belonged to the company and was a part of the system, and while

Mr. Hough did not examine tract one on account of a bridge being washed out, the property was described to him, and he was told what was on it; that it was not then being used; that it was a rough piece of land and of but little value; and that it was in the contemplation of the company to take down the poles and wires and use them for extending the line to a German church.

The contract between the parties of July 12, 1915, is inartistically drawn, but fairly interpreted shows that the Jamisons were to transfer all the shares of the capital stock of the company to Alice C. Hough, who would thereby become the sole stockholder in the company. The contract further described the physical property then owned by the corporation. This was described in very general terms, among the items of property listed being, "all pole lines, wires, meters, switches, conduits, fixtures, and land and buildings." That it was the intention of the parties that all the lands and buildings then belonging to the company, except such as were specifically reserved, should be included in the transaction, is, we think, free from doubt. Just prior to the signing of the contract, the evidence shows that I. J. Jamison acting for himself and the other stockholders represented that there were no debts against the company, and all of its physical property, including the land, was free from incumbrance. In the light of the testimony, and the clear intention of the parties as to what property was to be included in the transfer, it would be a fraud, which no court would permit, to allow the parties to the contract, who were the officers of the company, to, in the name of the company, transfer its property to one of their number between the time of the signing of the contract and the actual transfer of the property. Good faith and fair dealing require that the status of the property should remain in the same condition, except such as was specifically reserved from the operation of the contract.

Some questions of law are presented in the appellants' brief; but, in the view we have taken of the testimony, the authorities presented have no application. As we view it, only questions of fact are presented in this case.

Upon an examination of the entire record, we are satisfied that the finding and decree of the district court is sustained by the evidence, and is clearly right. In the court below each party was decreed to pay one-half of the costs. In this court the costs on the appeal will be borne by the appellants, including the costs of briefs. The costs in this court on the cross-appeal will be borne by the cross-appellant.

The finding and decree of the district court is

AFFIRMED.